In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-3020

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRAVIS THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 19 CR 50024 — **John J. Tharp, Jr.**, *Judge.*

ARGUED NOVEMBER 14, 2025 — DECIDED DECEMBER 16, 2025

Before SCUDDER, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

ST. EVE, *Circuit Judge.* A prospective juror in Travis Thomas's sex trafficking trial made comments during voir dire that he claims tainted the rest of the venire panel. The district court struck the prospective juror for cause but did not individually question or strike the remaining panel members—steps the court considered unnecessary given the nature of the comments and other safeguards against prejudice.

That response was well within its discretion. So too was the
district court's decision to provide the jury a redacted copy of
the indictment for its deliberations. We therefore affirm.

## I. Background

A federal grand jury indicted Thomas in 2019 on one count
of sex trafficking by force, threats of force, fraud, or coercion,
in violation of 18 U.S.C. § 1591(a) and (b)(1); two counts of
transporting a victim in interstate commerce with the intent
that she engage in prostitution, in violation of 18 U.S.C.
§ 2421(a); and two counts of coercing or enticing a victim to
travel in interstate commerce to engage in prostitution, in vi-
olation of 18 U.S.C. § 2422(a).

The district court opened voir dire by explaining to the ve-
nire that the government brought Thomas's case by indict-
ment. An indictment, the court instructed, merely identifies
the offenses for which the government charged the defendant;
it is not evidence of guilt and does not raise a suspicion of
guilt. The court then described the presumption of innocence
and the government's burden of proof.

The court's colloquy with one of the first venire panel's
prospective jurors ("Prospective Juror 24"), which took place
in front of the other panel members, is at the center of
Thomas's appeal.  After Prospective Juror 24 explained that
she had worked as a matron and file archivist for local gov-
ernment and law enforcement in Zion, Illinois, the court
asked whether those experiences would impact her ability to
remain fair and impartial. She responded:

> I would like to say no, but that might not be the case
> because going through these records and seeing what
> Lake County Major Task Force puts into these things,

we wouldn't usually bring anything that we didn't have enough evidence to prosecute. They put so much time and effort into this that, if they didn't have enough, they wouldn't be where they were.

The court then reminded Prospective Juror 24, and the rest of the venire, that an indictment has no evidentiary value. Nonetheless, Prospective Juror 24 confessed she may not be able to impartially evaluate whether the government has satisfied its burden of proof. "I know what we put into things to get to [the point of bringing charges] and what evidence we bring," she explained, and "when we didn't have enough evidence, we didn't go forward with it." The court clarified whether Prospective Juror 24's experience was limited to the police department in Zion, Illinois. She confirmed that it was but added that she socializes with members of other law enforcement departments, including the Rockford Police Department, which was involved with Thomas's case.

Thomas moved to strike the entire venire panel on the ground that Prospective Juror 24's comments irreparably tainted it. The court denied the motion, but it excused Prospective Juror 24 for cause. It reasoned in part that Prospective Juror 24's experience was limited to one police department and that the court had already instructed the jury multiple times, including during her colloquy, that an indictment lacks evidentiary value. The court also noted the logistical challenge of summoning a new venire but acknowledged it "would just have to deal with" that problem if it believed the venire was indeed tainted. Eight jurors ultimately came from Prospective Juror 24's venire panel, and four came from a

separate venire panel that was not present during Prospective Juror 24's colloquy with the court.

At the four-day trial's end, the district court instructed the jury and reiterated that an indictment is not probative of guilt. The jury, which over Thomas's objection received a redacted copy of the indictment during its deliberations, found Thomas guilty on all five counts.

Thomas moved for a new trial under Federal Rule of Criminal Procedure 33, reasserting his argument that Prospective Juror 24's comments prejudiced the venire panel. The district court denied the motion. It first concluded that the remarks were not prejudicial, both because Prospective Juror 24's experience was limited to the Zion Police Department, which had no role in Thomas's case, and because the prospective jurors would not be surprised to learn that police gather sufficient evidence before deciding to bring charges. The court also relied on its instructions; the court orally instructed the venire and jurors on the indictment's lack of evidentiary value four times, including once during the colloquy with Prospective Juror 24.

## II. Discussion

Thomas's appeal primarily contends the district court erred in declining to question or strike the remainder of Prospective Juror 24's venire panel. Thomas also contests the court's decision to provide the jury with a redacted copy of the indictment during deliberations. We review both decisions for abuse of discretion. *See United States v. Howard*, 692 F.3d 697, 707 (7th Cir. 2012); *United States v. Jackson*, 860 F.3d 438, 448 (7th Cir. 2017).

**A. Jury Bias**

The Fifth and Sixth Amendments guarantee an impartial jury to those standing trial for criminal charges. *United States v. Hill*, 153 F.4th 595, 598 (7th Cir. 2025). An impartial jury is one "that determines guilt on the basis of the judge's instructions and the evidence introduced at trial, as distinct from preconceptions or other extraneous sources of decision." *Oswald v. Bertrand*, 374 F.3d 475, 477 (7th Cir. 2004).

District courts enjoy "discretion in deciding how to handle instances of potential juror bias." *United States v. Blitch*, 622 F.3d 658, 667 (7th Cir. 2010). In exercising that discretion, courts must calibrate their response to the probability of bias, *see Oswald*, 374 F.3d at 480, but individual questioning is not always required, *see Blitch*, 622 F.3d at 665. Ultimately, "'whether to dismiss any or all jurors lies in the sound discretion of the trial judge,' and we will only reverse that decision if 'manifest injustice resulted from the judge's refusal to dismiss all of the jurors.'" *Howard*, 692 F.3d at 707–08 (quoting *United States v. Lott*, 442 F.3d 981, 984 (7th Cir. 2006)). There is manifest injustice when "improper comments … prevent other jurors from being fair and impartial." *Lott*, 442 F.3d at 984 (cleaned up).

The district judge did not abuse his discretion in handling Prospective Juror 24's comments. As a starting point, there was, at most, a low probability that her opinion prejudiced the other members of the venire, who enjoy a rebuttable presumption of impartiality. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Her opinion's connection to Thomas's trial was attenuated, as she worked at a police department that played no role in Thomas's case. True, she added that she socializes with members of other law enforcement departments, including

the Rockford Police Department, and one of its detectives tes-
tified at trial. But she had no experience working in that office
or with its procedures. We think it unlikely, therefore, that her
colloquy rendered the rest of the venire panel unable to im-
partially evaluate the government's evidence against Thomas.

Given the nature of Prospective Juror 24's comments, the
district judge permissibly relied on safeguards against preju-
dice other than individualized questioning or striking the
panel. The court extensively instructed both the venire and
the petit jury that an indictment is not evidence of guilt. In-
deed, it instructed the jury on this point four times: at the start
of voir dire, at the start of trial, at the conclusion of trial, and—
most critically—directly after Prospective Juror 24 expressed
her concerns. The jury also had a copy of the instructions the
court gave at the close of the case. Other instructions, such as
those concerning the presumption of innocence, the govern-
ment's burden of proof, and the jury's obligation to decide the
case based on the evidence presented at trial, reinforced this
key point. "We presume that the jury followed the court's in-
structions absent evidence of an overwhelming probability
that the jury was unable to follow the instructions as given."
*United States v. Pierson*, 89 F.4th 976, 986 (7th Cir. 2024).

In concluding that the court acted within its discretion, we
are mindful that jury selection is "particularly within the
province of the trial judge." *Skilling v. United States*, 561 U.S.
358, 386 (2010). Our standard of review thus reflects the "com-
pelling institutional considerations militating in favor of ap-
pellate deference to the trial judge's evaluation of the signifi-
cance of possible juror bias." *Arizona v. Washington*, 434 U.S.
497, 513 (1978). The district judge "is the judge most familiar
with the evidence and the background of the case on trial,"

and he "has observed the apparent reaction of the jurors" to the statement in question. *Id.* at 514; *see also United States v. Pendleton*, 832 F.3d 934, 943 (8th Cir. 2016) ("[T]he district court is in the best position to judge whether the dismissed venireperson's statements are so detrimental as to render the entire venire biased against a defendant.").

Thomas's arguments to the contrary do not persuade us. Some address only Prospective Juror 24's level of bias, but "our focus at this stage must be on the impartiality of the jury that actually sat, not on [the juror] who was struck." *Lott*, 442 F.3d at 984. Otherwise, Thomas primarily relies on two cases, *Oswald* and *Blitch*, in which we held the district court inadequately addressed potential juror bias. *Oswald*, however, concerned extreme evidence of juror bias: the court had reason to believe the entire venire had been discussing the case during four days of voir dire and had concluded the defendant was guilty. *See* 374 F.3d at 478–81. We do not find the response required of a trial judge in that context instructive in this one. And in *Blitch*, we held the district court abused its discretion in elevating logistical concerns (the judge's upcoming sitting by designation on a circuit court) over evidence of juror bias. *See* 622 F.3d at 662–63. Here, the district court's reference to logistical concerns when denying Thomas's contemporaneous motion to strike the venire panel was not a load-bearing aspect of its decision. The court first concluded Prospective Juror 24's comments did not taint the venire because of their nature and the court's instructions. Only after that did the court note "the logistical problem, which, if I agreed with the taint, we would just have to deal with."

**B. The Redacted Indictment**

Prior to trial, Thomas moved to prevent the district court from providing the jury with a copy of the indictment during its deliberations. The court denied his motion, reasoning that the indictment was "bare-bones," helpfully set out the charges against Thomas, and would be redacted to remove extraneous content like the characterization of the indictment as a true bill. Thomas argues this was error.

Providing a copy of the indictment to the jury is "common practice." *Jackson*, 860 F.3d at 448; *see also* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit § 1.02 committee cmt. In providing the indictment, the district court adhered to the safeguards we have encouraged. Its instructions, which the court read to the jury and then provided for its deliberations, incorporated Pattern Criminal Jury Instruction § 1.02 verbatim (with a couple of case-specific additions). It redacted the indictment as appropriate. And the indictment was "bare-bones" and lacked "prejudicial narrative." The court did not abuse its discretion. *See Jackson*, 860 F.3d at 448–49; *see also* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit § 1.02 committee cmt. To be sure, Thomas suggests Prospective Juror 24's comments distinguish his case by heightening the prejudice associated with the indictment. Because we conclude the district court adequately addressed that issue, though, that distinction does not make a dispositive difference.

One final note. Thomas asks that we reverse on a theory of cumulative error. The threshold requirement of cumulative error is that multiple errors occurred at trial, and we have found none, so Thomas cannot prevail on that theory. *See*

*United States v. Sheffler*, 125 F.4th 814, 830 (7th Cir. 2025); *United States v. Edwards*, 34 F.4th 570, 588 (7th Cir. 2022).

*     *     *

The judgment of the district court is

AFFIRMED.